IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TREMANE DARNELL CARTHEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:19-CV-593-WKW-KFP |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the Court is federal prisoner Tremane Darnell Carthen's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. Doc. 1.[1] For the reasons discussed below, the Magistrate Judge RECOMMENDS that Carthen's § 2255 Motion be DENIED without an evidentiary hearing and that this action be DISMISSED with prejudice.

## I.    BACKGROUND

On September 8, 2016, a jury found Carthen guilty of one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count 1); three counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Counts 2, 4, and 6); three counts of brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts 3, 5, and 7); and one count of being a felon in possession of a

---

[1] References to document numbers of the pleadings, motions, and other materials in the Court file in this § 2255 action, as assigned on the docket sheet by the Clerk of Court, are designated as "Doc." References to document numbers assigned by the Clerk in the underlying criminal case (CASE NO. 2:15-CR-511-KKD) are designated as "Crim. Doc." Pinpoint citations are to the pages of the electronically filed documents in the Court's CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 8).[2] After a sentencing hearing on December 5, 2016, the district court sentenced Carthen to 685 months (57 years and one month) in prison, consisting of one month as to Counts 1, 2, 4, 6, and 8 to run concurrently to each other and consecutively to the 84 months imposed as to Count 3; and 300 months as to Counts 5 and 7 to run consecutively to each other and all other counts. Doc. 1-2 at 3.

Carthen appealed, arguing that (1) the district court erred in denying his motion for judgment of acquittal challenging the sufficiency of the government's evidence; (2) the district court erred in permitting coconspirator Kevin Martin to testify about hearsay statements attributed to Carthen and coconspirator Scottie Groce; and (3) the district court misapplied 18 U.S.C. § 924(c)'s mandatory minimum sentencing scheme in his case. On October 25, 2018, the Eleventh Circuit issued an opinion affirming Carthen's convictions and sentence. *See United States v. Carthen*, 906 F.3d 1315 (11th Cir. 2018).

On August 12, 2019, Carthen, acting pro se, filed this § 2255 motion asserting the following claims:

1. The government's evidence was insufficient to connect him to the robbery conspiracy or to prove the "affecting interstate commerce" element of Hobbs Act robbery.

2. The district court misapplied 18 U.S.C. § 924(c)'s mandatory minimum sentencing scheme because his three § 924(c) convictions stemmed from the same incident.

3. The district court erred in excluding proposed evidence to impeach testimony by coconspirator Kevin Martin.

---

[2] Carthen was indicted with Scottie Groce and Kevin Martin in November 2015 for crimes arising out of their robbery of three Alabama gas stations in July 2014. Carthen and Groce were tried together. The government's key witness at trial was their coconspirator, Martin, who agreed to testify after entering a guilty plea.

4.      He "never received an evidentiary hearing for the cases he was [implicated] in by his codefendants in the district court."

5.      The district court's denial of his motion to sever his trial from that of coconspirator Scottie Groce deprived him of his right to confront Groce.

6.      The government failed to provide a warrant for one of the gas station robberies.

7.      He was not afforded a detention hearing.

8.      His § 924(c) convictions are invalid, given the Supreme Court's holding in *United States v. Davis*, 139 S. Ct. 2319 (2019).

9.      Bill Wayne Lewis, Jr., the attorney who represented him in proceedings that took place before trial but withdrew as his counsel before trial, rendered ineffective assistance by operating under a "conflict of interest" stemming from Mr. Lewis's sister's position as the lead deputy district attorney in Carthen's prosecution at the state level.

10.     Trial counsel Richard K. Keith rendered ineffective assistance by failing to (a) move for a continuance to ensure he was prepared for trial after Mr. Lewis withdrew as Carthen's counsel; (b) move to suppress the government's DNA evidence; and (c) seek severance of his trial from that of coconspirator Groce.

11.     Appellate counsel Roianne Houlton Conner rendered ineffective assistance by failing to (a) provide him with a complete transcript of the sentencing hearing and (b) argue the sufficiency of the government's evidence to support his conspiracy conviction and Hobbs Act robbery convictions.

Doc. 1 at 4-20.[3]

---

[3] Carthen's claims overlap in places and are sometimes repetitive, and they are not always presented in a clear and logical fashion. For organizational and analytical purposes, the Court has recast some of the claims in a more appropriate presentation.

On May 5, 2021, Carthen filed an amendment to his § 2255 motion essentially reasserting his argument that his § 924(c) convictions are invalid under the Supreme Court's holding in *Davis*. Doc. 36.

## II.   LEGAL STANDARD

The grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner may have relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255. *See also McKay v. United States*, 657 F.3d 1190, 1194, n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). If a court determines a prisoner is entitled to § 2255 relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The petitioner, not the government, bears the burden to establish that vacatur of the conviction or sentence is required. *Beeman v. United States*, 871 F.3d 1215, 1221–22 (11th Cir. 2017).

## III.   DISCUSSION

### A.   Claims Raised and Resolved on Direct Appeal

#### 1.   Sufficiency of the Evidence

Carthen claims the government's evidence was insufficient to connect him to the robbery conspiracy or to prove the "affecting interstate commerce" element of Hobbs Act robbery.[4] Doc. 1 at 7. This claim is barred from § 2255 review.

On direct appeal, Carthen argued that the district court erred in denying his motion for judgment of acquittal challenging the sufficiency of the government's evidence to support his conspiracy conviction[5] and Hobbs Act robbery convictions.[6] The Eleventh Circuit reviewed Carthen's claim and found that it lacked merit. *See Carthen*, 906 F.3d at 1319–20.

"The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *see also United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981). If a claim

---

[4] The Hobbs Act provides that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do . . . shall be fined under this title or imprisoned not more than twenty years, or both." 18 U.S.C. § 1951(a). The Act broadly defines "commerce" as being "commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction." 18 U.S.C. § 1951(b)(3).

[5] The charged conspiracy was a conspiracy to commit Hobbs Act robbery.

[6] Carthen did not challenge his felon-in-possession-of-a-gun conviction on appeal. *See Carthen*, 906 F.3d at 1321 n.3.

has been raised on direct appeal and decided adversely to a defendant, it cannot be relitigated in a collateral attack under § 2255. *Nyhuis*, 211 F.3d at 1343.

Carthen cannot relitigate his claim regarding the sufficiency of the evidence to support his conspiracy conviction and Hobbs Act robbery convictions. Because this issue was decided against him by the Eleventh Circuit on direct appeal, his present claim is procedurally barred from § 2255 review.[7]

### 2.   Misapplication of § 924(c)'s Mandatory Minimum Sentencing Scheme

Carthen argues that the district court misapplied 18 U.S.C. § 924(c)'s mandatory minimum sentencing scheme in sentencing him to a total of 57 years on his three § 924(c) convictions.[8] Doc. 1 at 8, 10. He maintains that the three § 924(c) convictions stemmed from "the same incident" but that the district court improperly considered them to be successive convictions for purposes of § 924(c)(1)(C)(i) and (D)(ii), which resulted in a large increase in his sentence. Doc. 1 at 8.

---

[7] As part of this claim, Carthen asserts that the government did not prove the "affecting interstate commerce" element of Hobbs Act robbery. Doc. 1 at 7. Sufficient proof of this element of Hobbs Act robbery was implicit in the Eleventh Circuit's denial of Carthen's claim challenging the sufficiency of the evidence supporting his conspiracy conviction and Hobbs Act robbery convictions. In any event, as discussed below in Part III.D.3 of this Recommendation, the government presented ample evidence to satisfy the "affecting interstate commerce" requirement for Hobbs Act robbery.

[8] When Carthen was sentenced in 2016, § 924(c)'s sentencing scheme had a "stacking" provision. Defendants convicted of brandishing a firearm during a crime of violence under § 924(c) were subject to a minimum sentence of seven years in prison on their first conviction, 18 U.S.C. § 924(c)(1)(A)(ii), and a minimum sentence of 25 years in prison for every conviction after that, 18 U.S.C. § 924(c)(1)(C)(i). These sentences may not run concurrently with each other or with any other prison sentence. 18 U.S.C. § 924(c)(1)(D)(ii). Because Carthen was convicted of three counts under § 924(c) for brandishing a firearm during a Hobbs Act robbery, the district court calculated he was subject to the following mandatory minimum prison sentences for those convictions: one sentence of seven years and two sentences of 25 years, or a total of 57 years, on the § 924(c) counts. The district court sentenced him to this minimum for those convictions.

Carthen presented this same argument on direct appeal. The Eleventh Circuit reviewed his claim and found it to be without merit.[9] *See Carthen*, 906 F.3d at 1321–22. Because the claim was raised on direct appeal and decided adversely to Carthen, it cannot be relitigated in this § 2255 action. *Nyhuis*, 211 F.3d at 1343; *Rowan*, 663 F.2d at 1035.

In making this claim, Carthen references to the First Step Act and suggests that the district court's application of § 924(c)'s mandatory minimum sentencing scheme, commonly called "stacking," violates the First Step Act. Doc. 1 at 10. Congress enacted the First Step Act on December 21, 2018, making statutory penalties enacted under the Fair Sentencing Act retroactive for covered offenses. *See* First Step Act, § 404. Before the First Step Act, § 924(c) contained the "stacking" provision about which Carthen complains, where, with a second or subsequent conviction under § 924(c), even if charged in the same indictment, a defendant was to be sentenced to a consecutive term of imprisonment of not less than 25 years. 18 U.S.C. § 924(c)(1)(C)(i). Section 403(a) of the First Step Act amended this language so that the 25-year mandatory minimum on a second § 924(c) violation only applies if the first § 924(c) conviction has become final. *See* First Step Act

---

[9] In addressing this claim, the Eleventh Circuit stated:

> Mr. Carthen disputes the District Court's calculation. He correctly notes the twenty-five-year minimum sentence only applies to "second or subsequent conviction[s]." 18 U.S.C. § 924(c)(1)(C)(i). But he incorrectly argues he did not receive any "second or subsequent conviction" within the meaning of the statute because his three convictions "stem[med] from the same incident." This argument is foreclosed by binding precedent. *See United States v. Bowers*, 811 F.3d 412, 430 n.12 (11th Cir. 2016) ("This Court previously held, and the Supreme Court later confirmed, that additional § 924(c) counts charged in the same indictment are second and subsequent for the purposes of § 924(c)(1)(A)(ii)."). The District Court therefore did not miscalculate the mandatory minimum sentence.

906 F.3d at 1321–22.

§ 403(a). But § 403(b) explained that the amendments only apply "if a sentence for the offense has not been imposed as of [the] date of enactment" of the First Step Act: December 21, 2018. *Id*. § 403(b). Carthen was sentenced in December 2016. Because the plain language of § 403 of the First Step Act prohibits retroactive application, the First Step Act does not provide authority to reduce Carthen's sentence on his § 924(c) convictions in this § 2255 proceeding.[10]

### 3.   Exclusion of Impeachment Testimony

Carthen contends that the district court erred in excluding proposed evidence to impeach trial testimony by coconspirator Kevin Martin. Doc. 1 at 18–19, 20.

Although Carthen did not present this claim in his own appellate brief, the claim was presented to the Eleventh Circuit in the same appeal by his coconspirator Scottie Groce. The Eleventh Circuit reviewed the claim and found it to be without merit. *See Carthen*, 906 F.3d at 1320–21.

The rationale the Eleventh Circuit applied in rejecting Groce's claim—that the excluded testimony was extrinsic evidence inadmissible under Fed. R. Evid. 608(b)— would have applied equally to this claim had it been asserted by Carthen in his appeal. A district court may not grant § 2255 relief inconsistent with the law of the case established by the appellate court's decision. *Butcher v. United States*, 368 F.3d 1290, 1299–1300. It

---

[10] Further, a § 2255 motion would not be the appropriate vehicle for Carthen to seek a sentence reduction. That is because § 2255 allows a prisoner to ask the Court to vacate or set aside his sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, or that the sentence [exceeded] the maximum authorized by law." 28 U.S.C. § 2255. But when Carthen's sentence was imposed, the district court was required by law to impose the 25-year mandatory-minimum sentence for each of his subsequent § 924(c) convictions. Thus, § 2255 provides him no relief.

is beyond the purview of this Court to review the Eleventh Circuit's ruling. The law of the case doctrine "bars relitigation of issues that were decided, either explicitly or by necessary implication, in an earlier appeal of the same case." *United States v. Jordan*, 429 F.3d 1032, 1035 (11th Cir. 2005). Accordingly, this Court will not review Carthen's claim regarding the exclusion of impeachment testimony.

### 4.      Lack of Hearing On Existence of Conspiracy

Carthen contends he "never received an evidentiary hearing for the cases he was [implicated] in by his codefendants in the district court." Doc. 1 at 10, 20.

Carthen does not elaborate on this claim, but he seems to suggest he was entitled to a separate hearing where the government would have been required to prove the existence of a conspiracy before coconspirator Kevin Martin could testify about hearsay statements in furtherance of the conspiracy made by Carthen and coconspirator Scottie Groce. On direct appeal, Carthen argued that the district court erred in permitting Martin to testify about hearsay statements attributed to him and Groce without the government first presenting independent evidence proving the existence of a conspiracy. *See Carthen*, 906 F.3d at 1320. The Eleventh Circuit reviewed this claim and found that, in light of the ample independent evidence confirming Martin's trial testimony about the conspiracy involving Carthen, the district court did not plainly err in admitting Martin's trial testimony. *Id*. Thus, the argument that a separate hearing was required before Martin could testify at trial about Carthen and Groce's hearsay statements in furtherance of the conspiracy was decided against Carthen, whether explicitly "or by necessary implication," *Jordan*, 429 F.3d at 1035, in the Eleventh Circuit's ruling in Carthen's appeal. Consequently, this Court will

not review Carthen's conclusory claim that he was entitled to a hearing on "the cases he was implicated in" through his coconspirator's trial testimony.[11]

### B.   Substantive Claims Not Raised on Direct Appeal

Carthen asserts three substantive claims not presented in his direct appeal: (1) the district court's denial of his motion to sever his trial from that of coconspirator Scottie Groce deprived him of his right to confront Groce (Doc. 1 at 20); (2) the government "failed to provide a warrant" for one of the gas station robberies (Doc. 1 at 10, 20); and (3) he was not afforded a detention hearing (Doc. 1 at 20).[12]

Generally, if an available claim is not advanced on direct appeal, it is deemed procedurally defaulted in a § 2255 proceeding. *Mills v. United States*, 36 F.3d 1052, 1055–56 (11th Cir. 1994); *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989). A petitioner can avoid this procedural bar only by showing both cause for failing to raise the claim on direct appeal and actual prejudice arising from that failure. *See United States v. Frady*, 456 U.S. 152, 167–68 (1982); *Mills*, 36 F.3d at 1055. Carthen offers no grounds as cause excusing his failure to raise these issues in his direct appeal, and he shows no actual prejudice resulting from these matters. Therefore, these claims are procedurally barred from review.

---

[11] If Carthen means something different by this claim in his § 2255 motion, it is procedurally defaulted as not having been presented on direct appeal. *See Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989). Also, because he did not demonstrate both cause for the failure to raise the claim on direct appeal and actual prejudice arising from that failure, he does not avoid this procedural bar. *See United States v. Frady*, 456 U.S. 152, 167–68 (1982).

[12] Carthen asserts each of these claims in an entirely conclusory fashion.

**C.      Validity of Carthen's § 924(c) Convictions In Light of _Davis_**

Carthen claims his three § 924(c) convictions under Counts 3, 5, and 7 of the indictment for brandishing a firearm during a crime of violence are invalid under the U.S. Supreme Court's holding in _United States v. Davis_, 139 S. Ct. 2319 (2019), because the predicate crime for each conviction—Hobbs Act robbery—is not "a crime of violence." Doc. 1 at 16–17; Doc. 36. This claim lacks merit.

Before the Supreme Court's _Davis_ decision, a "crime of violence" under 18 U.S.C. § 924(c)(3)(A) and (B) was an offense that is a felony and (A) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," or that (B) "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." The former clause is referred to as the "use-of-force" or "elements" clause, and the latter clause as the "residual clause." _Davis_, 139 S. Ct. at 2324.

In _Davis_, which was decided in June 2019, the Supreme Court extended its holdings in _Johnson v. United States_, 576 U.S. 591 (2015), and _Sessions v. Dimaya_, 138 S. Ct. 1204 (2018), to 18 U.S.C. § 924(c) and held that § 924(c)(3)(B)'s residual clause, like the residual clauses in the Armed Career Criminal Act and 18 U.S.C. § 16(b), is unconstitutionally vague. _Davis_, 139 S. Ct. at 2324–25, 2336. The Eleventh Circuit has since held that _Davis_ announced a new rule of constitutional law that applies retroactively to cases on collateral review. _In re Hammond_, 931 F.3d 1032, 1038–40 (11th Cir. 2019).

Although _Davis_ effectively voided § 924(c)(3)(B)'s residual clause, it left § 924(c)(3)(A)'s use-of-force clause intact. The predicate crime of violence for each of

Carthen's § 924(c) convictions under Counts 3, 5, and 7 of the indictment was a Hobbs Act robbery, specifically as charged in Counts 2, 4, and 6 of the indictment.[13] Nothing in the Supreme Court's holding in *Davis* regarding the unconstitutionality of § 924(c)(3)(B)'s residual clause—and nothing in the holdings of *Johnson* or *Dimaya*—invalidates Hobbs Act robbery as a "crime of violence" under § 924(c)(3)(A)'s use-of-force clause. Also, binding Eleventh Circuit precedent holds that Hobbs Act robbery is categorically a crime of violence under § 924(c)(3)(A)'s use-of-force clause.[14] *See In re Saint Fleur*, 824 F.3d 1337, 1340–41 (11th Cir. 2016). That binding precedent is dispositive of Carthen's claim, which entitles him to no relief.[15]

Carthen states, incorrectly, that the predicate crime for at least one of his § 924(c) convictions was conspiracy to commit Hobbs Act robbery, which is not "a crime of violence" for purposes of § 924(c). Doc. 1 at 16. Although conspiracy to commit Hobbs Act robbery is not a crime of violence for purposes of § 924(c), *see, e.g., Brown v. United*

---

[13] Count 3 of the indictment alleged that the predicate crime of violence for that § 924(c) count was the Hobbs Act robbery charged in Count 2 (Crim. Doc. 4 at 2–3); Count 5 alleged that the predicate crime of violence for that § 924(c) count was the Hobbs Act robbery charged in Count 4 (Crim. Doc. 4 at 4–5); and Count 7 alleged that the predicate crime of violence for that § 924(c) count was the Hobbs Act robbery charged in Count 6 (Crim. Doc. 4 at 5–6).

[14] A federal prisoner raising a claim under *Davis* cannot show he was sentenced under § 924(c)(3)(B)'s residual clause if current binding precedent establishes that his predicate offense qualifies as a crime of violence under § 924(c)(3)(A)'s use-of-force clause in § 924(c)(3)(A). *See In re Pollard*, 931 F.3d 1318, 1321 (11th Cir. 2019).

[15] It does not matter that the predicate crimes of violence for Carthen's § 924(c) convictions were *aiding and abetting* Hobbs Act robbery. The Eleventh Circuit has repeatedly held that where the companion substantive offense qualifies as a crime of violence under the use-of-force clause, aiding and abetting the companion substantive offense equally qualifies as a crime of violence under the use-of-force clause. *See In re Colon*, 826 F.3d 1301, 1305 (11th Cir. 2016) (specifically holding that aiding and abetting Hobbs Act robbery is a crime of violence under § 924(c)(3)(A) because a substantive conviction of Hobbs Act robbery is a crime of violence); *see also, e.g., Steiner v. United States*, 940 F.3d 1282, 1293 (11th Cir. 2019).

*States*, 942 F.3d 1069, 1075–76 (11th Cir. 2019), conspiracy to commit Hobbs Act robbery was *not* the predicate crime for any of Carthen's three § 924(c) convictions. Conspiracy to commit Hobbs Act robbery was the charge in Count 1 of Carthen's indictment. Crim. Doc. 4 at 1–2. That offense, however, was not alleged as the predicate crime of violence for any of the § 924(c) charged against Carthen.

### D.   Carthen's Claims of Ineffective Assistance of Counsel

Carthen presents various claims of ineffective assistance of trial and appellate counsel. Doc. 1 at 4, 8, 14–15.

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To establish ineffective assistance of appellate counsel, a movant must demonstrate "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker[.] Generally, only when ignored issues are clearly stronger than those presented, will the

presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

### 1.   Ineffective Assistance: Initial Counsel's Conflict of Interest

Carthen claims that Bill Wayne Lewis, Jr., the attorney who represented him in the criminal proceedings that took place before his trial but withdrew as his counsel approximately 35 days before trial, rendered ineffective assistance by operating under a "conflict of interest" stemming from Mr. Lewis's sister's position as the lead deputy district attorney in Carthen's prosecution at the state level. Doc. 1 at 4, 14–15.

In support of this claim, Carthen asserts:

> Mr. Carthen was arrested and charged in Autauga County, where the lead deputy district Attorney was Ms. Desirae Lewis, the sister of his first counsel Bill Lewis. Mr. Bill Lewis was appointed to assist Mr. Carthen at an evidentiary hearing in Elmore County for these same crimes while at the state level. The charges were eventually dismissed around Nov. 2015 because of the federal indictment on the same crimes. Mr. Bill Lewis filed his notice of appearance as counsel for Mr. Carthen on Jan. 6, 2016. Mr. Lewis filed several pleadings that were not authorized by Mr. Carthen, and failed to file several pleadings that were warranted. Furthermore, as his closing act, Mr. Lewis filed a motion to withdraw as counsel stating that he had a conflict of interest due to his sister, Desirae Lewis serving as lead attorney in the prosecution of Mr. Carthen at a state level. Bill Lewis withdrew from Mr. Carthen's case 35 days before trial.

Doc. 1 at 4.

Addressing Carthen's claim in an affidavit filed with the Court, Mr. Lewis states:

> In August of 2016, in an attempt to grow my law practice, I began discussions with Desirae Lewis, my sister, who was a prosecutor with the Nineteenth Judicial Circuit at the time, to add her to my firm as an associate attorney. As I was going over her responsibilities and the current case load, I learned that she prosecuted Mr. Carthen for the same robbery offenses in which I was representing him on the state level. Pursuant to Rules of Professional

Responsibility, I was ethically obligated to make Mr. Carthen and the Court aware of the situation and the fact that I had been exposed to her comments about the case as soon as I was made aware of them.

At that time Mr. Carthen had already filed a prior motion to have me removed from the case due to my request for him to receive a mental evaluation. This goes to his allegations that I failed to file pleadings that according to him were "warranted." Based on that history, out of abundance of caution, and after discussing the matter fully with Mr. Carthen, he agreed that I should withdraw from the case. It certainly appears to have been a wise decision based on his recent filing.

Doc. 11 at 1–2.

To prevail on an ineffective-assistance-of-counsel claim based on an alleged conflict of interest, a defendant must "establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980); *see also Smith v. White*, 815 F.2d 1401, 1405 (11th Cir. 1987).

An "actual conflict" of interest occurs when a lawyer has "inconsistent interests." *Smith* [*v. White*], 815 F.2d [1401][,] 1405 [(11th Cir. 1987)]. In order to prove that an "actual conflict" hindered petitioner's lawyer's performance, petitioner "must make a factual showing of inconsistent interests" or point to "specific instances in the record" to suggest an actual impairment of his or her interests. *Smith*, 815 F.2d at 1404.

*Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999) (citation omitted).

This requires petitioner to make a factual showing of inconsistent interests and

"demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *Smith v. White*, 815 F.2d 1401, 1405 (11th Cir. 1987). Absent such a demonstration, the conflict remains hypothetical and cannot form the basis for relief.

*Porter v. Singletary*, 14 F.3d 554, 560–61 (11th Cir. 1994) (citation omitted).

Here, Carthen demonstrates no instances in the record of adverse actions taken by Mr. Lewis that may plausibly have stemmed from Mr. Lewis's placing the interests of another party—e.g., his sister, Ms. Lewis—over those of Carthen. Although Ms. Lewis was a Deputy DA for the State of Alabama in the prosecution of related state charges against Carthen, those state charges were dismissed by the State in October 2015 (Crim. Doc. 151-2), before Mr. Lewis entered a notice of appearance in January 2016 to represent Carthen in the federal case (Crim. Doc. 39). Carthen fails to show that Mr. Lewis and Ms. Lewis engaged in collusion, shared any privileged or confidential information about Carthen or his case, or acted in a manner demonstrating that a conflict of interest existed. Mr. Lewis withdrew from representing Carthen when he discovered his sister's prior involvement in the State of Alabama's prosecution. *See* Crim. Docs. 151, 161.

Because Carthen fails to show that an "actual conflict" hindered Mr. Lewis's performance or caused him to engage in actions (or inaction) harmful to Carthen's defense, he is entitled to no relief on his claim that his counsel rendered ineffective by operating under a conflict of interest.

### 2.    Ineffective Assistance: Trial Counsel Keith

Carthen claims that his trial counsel, Richard K. Keith, rendered ineffective assistance by failing to (a) move for a continuance to ensure he was prepared for trial after Mr. Lewis withdrew as Carthen's counsel approximately 35 days before trial; (b) move to suppress the government's DNA evidence; and (c) seek severance of his trial from that of coconspirator Groce. Doc. 1 at 4, 14–15.

a.      **Failure to request continuance**

In an affidavit addressing his preparation for Carthen's trial and whether a continuance was needed, Mr. Keith states:

> Mr. Carthen claims I should have asked for a continuance of trial as I did not have sufficient time to properly prepare.
>
>      I spent 25.2 hours in interviews and conferences, 70.4 hours in reviewing records, 26.7 hours in legal research and brief writing and 5.4 hours in travel time. I was fully prepared for trial.

Doc. 9 at 1.

Mr. Keith's affidavit, and a review of the record reflecting Mr. Keith's vigorous defense of Carthen, establishes that Mr. Keith acted reasonably in not seeking a continuance of Carthen's trial for additional preparation. Further, Carthen points to no specific instances of how Mr. Keith performed deficiently because of a lack of preparation or how he was prejudiced by Mr. Keith's failure to request a continuance. Failing to show deficient performance or resulting prejudice, Carthen is entitled to no relief on this claim.

b.      **Failure to seek suppression of DNA evidence**

At trial, Kristen Maturi, an expert witness for the government, testified that she matched Carthen's DNA to DNA found on gloves and a hoodie police officers discovered near one of the gas stations robbed by Carthen and his coconspirators. Carthen maintains, without explanation, that "the DNA evidence contained mixtures of DNA samples that could not possibly have been identified as a positive match to Mr. Carthen by Kristen Maturi, who was allowed to testify as an expert witness, not that she was in fact an expert with the proper credentials to testify as an expert." Doc. 1 at 14. According to Carthen, the

DNA evidence "should have been suppressed," and Mr. Keith, he says, was ineffective for failing to move for its suppression. Doc. 1 at 14.

Addressing Carthen's allegations, Mr. Keith states:

Mr. Carthen further claims the Government's DNA expert was not an expert, and that the DNA testing results should have been suppressed. There were no grounds to suppress the DNA test results and the DNA expert (Kristen Maturi) has been declared an expert many times.

Doc. 9 at 2.

Carthen suggests no grounds upon which the DNA evidence might have been suppressed. A defendant alleging that his counsel was ineffective for failing to move to suppress evidence must demonstrate that, if made, the suppression motion would have been meritorious and the result of the proceeding would likely have been different. *United States v. Matos*, 905 F.2d 30, 33 (2d Cir. 1990); *see, e.g., DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (defendant alleging ineffective assistance for failure to file motion must show that motion had merit).

Carthen fails to establish prejudice resulting from Mr. Keith's failure to move for suppression of the DNA evidence. He also fails to show that Mr. Keith's actions were professionally unreasonable. He is entitled to no relief on this claim.

### c.     Failure to pursue severance issue

While still acting as Carthen's counsel, Mr. Lewis moved to sever Carthen's trial from that of coconspirator Groce on grounds that Groce made a recorded post-arrest confession that also implicated Carthen in the robberies and, as a consequence, Carthen would be denied his Sixth Amendment rights under the Confrontation Clause if he was

tried jointly with Groce, where Groce's confession could be introduced and Groce might choose not to testify.[16] Crim. Doc. 55. On similar grounds, Mr. Lewis argued in the motion to sever that Carthen should not be tried with coconspirator Martin. Crim. Doc. 55. Separately, Groce's counsel moved to suppress Groce's confession, and in July 2016 the district court granted the motion to suppress Groce's confession. Crim. Doc. 129, 148. While Carthen's motion to sever was pending, Mr. Lewis withdrew as Carthen's counsel and Mr. Keith assumed representation of Carthen. In August 2016, the magistrate judge entered a recommendation that Carthen's motion to sever should be granted as to any joint trial with Martin but should be denied as to a joint trial with Groce. Crim Doc. 167. In recommending that Carthen's motion to sever be denied as to Groce, the magistrate judge reasoned that, because Groce's confession (with its statements implicating Carthen) had been suppressed, it could not be introduced at any trial, and there would be no Confrontation Clause violation or undue prejudice to Carthen in a joint trial with Groce. Crim. Doc. 167. The district court adopted the magistrate judge's recommendation that Carthen's motion to sever as to Martin be granted and denied as to Groce. Crim. Doc. 213.

Although Carthen's claim in his § 2255 motion is vague, he appears to argue that Mr. Keith, after replacing Mr. Lewis as his counsel, should have further pursued severance of Carthen's trial from that of Groce. According to Carthen, he "asked Mr. Keith to appeal his severance hearing decision" but Keith failed to do so. Doc. 1 at 14.

---

[16] Under *Bruton v. United States*, 391 U.S. 123, 129 (1968), a defendant is deprived of his Sixth Amendment rights under the Confrontation Clause if a confession by his codefendant is introduced in their joint trial.

In his affidavit addressing Carthen's claim, Mr. Keith states:

> Mr. Carthen claims I should have appealed the Magistrate Judge's ruling on his severance motion. The basis for the severance was that co-defendant Groce's confession was incriminating against Mr. Carthen as it would have been admissible at trial, prejudicing Carthen. However, as co-defendant's Groce's statements were suppressed, there was no further ground to appeal.
>
> . . . .
>
> . . . When co-defendant Groce's confession was suppressed, it removed the grounds to sever and made any further appeal unnecessary.

Doc. 9 at 2.

As a general rule, defendants who are jointly indicted should be tried together. *United States v. Morales*, 868 F.2d 1562, 1571 (11th Cir. 1989); *United States v. Morrow*, 537 F.2d 120, 136 (5th Cir. 1976). This is particularly true in conspiracy cases, where charges against multiple defendants may be proven with substantially the same evidence. *United States v. Dorsey*, 819 F.2d 1055, 1058 (11th Cir. 1987). Severance is only justified when a defendant can show prejudice from which the trial court cannot provide adequate protection. *Dorsey*, 819 F.2d at 1058; *Morrow*, 537 F.2d at 136. That a defendant may suffer some prejudice is not enough to justify severance, as a degree of prejudice is inherent in joint trials. *United States v. Harris*, 908 F.2d 728, 736 (11th Cir. 1990). A defendant's allegations of prejudice must be balanced against the interest of judicial economy and concomitant policy favoring joint trials in conspiracy cases. *United States v. Kopituk*, 690 F.2d 1289, 1318 (11th Cir. 1982).

Here, Carthen fails to show that Mr. Keith's decision not to pursue the severance issue further was a professionally unreasonable. He demonstrates no reasonable likelihood

that further pursuit of a severance would have succeeded. Failing to demonstrate deficient

performance or prejudice, he is entitled to no relief on this claim.

### 3.      Ineffective Assistance: Appellate Counsel Conner

Carthen claims his appellate counsel, Roianne Houlton Conner, rendered ineffective

assistance by failing to (a) provide him with a complete transcript of his sentencing hearing

and (b) argue the sufficiency of the government's evidence to support his conspiracy

conviction and Hobbs Act robbery convictions. Doc. 1 at 8, 15.

Addressing Carthen's claims, Ms. Conner states:

I did review the extensive transcript in this matter as well as prepared the
brief for the consideration by the 11th Circuit Court of Appeals. From the
complaint it appears that Carthen is complaining that I was ineffective in that
I did not present issues directly related to the Conspiracy issue nor the Hobbs
Act. He alleges that the government never proved that a conspiracy existed.
As was pointed out in the brief filed, the first witness that testified was Mr.
Carthen's codefendant[,] Martin[,] who testified about Mr. Carthen's
involvement in the robberies as well as the brandishing of the firearm.
However, I did argue the sufficiency of the evidence in issue II of the brief
that was presented to the 11th Circuit for their consideration. This was also
the issue that was presented in the oral arguments before the 11th Circuit
when they were sitting in Montgomery, Alabama.

Mr. Carthen also complained about missing pages from the sentencing
transcript. The entire transcript was sent to Mr. Carthen on at least three
occasions. I copied and paid for the transcript to be mailed to him when he
was in a facility in Pine Knot, Kentucky. A second copy containing the
transcript was sent to a facility in Atwater, California. Neither box containing
the transcripts were returned to us. The last time his mother, Ms. Doris
Jackson came by the office and we printed another complete copy of the
transcript. We assisted her in packaging the transcript and she mailed the
same. However, this package was returned from the facility marked as
"refused" and the package with its contents was returned to Ms. Jackson.

Doc. 6 at 2.

Carthen does not show that Ms. Conner failed to make reasonable efforts to provide him with a complete transcript of his sentencing hearing. Moreover, he demonstrates no resulting prejudice resulting from this matter. This claim entitles Carthen to no relief.

There is no factual basis for Carthen's claim that Ms. Conner failed to argue the sufficiency of the government's evidence to support his conspiracy conviction and Hobbs Act robbery convictions. It is clear from the record that Ms. Conner argued both of these issues in Carthen's direct appeal. This claim, too, entitles Carthen to no relief.

Carthen contends that Ms. Conner should have specifically challenged the government's proof of the "affecting interstate commerce" element of Hobbs Act robbery. Doc. 1 at 15. However, a challenge to the proof of this element of Hobbs Act robbery was implicit in Ms. Conner's claim on appeal challenging the sufficiency of the evidence supporting Carthen's conspiracy conviction and Hobbs Act robbery convictions. The Eleventh Circuit held that the government's evidence was sufficient to support Carthen's convictions.

Moreover, the government presented ample evidence to satisfy the "affecting interstate commerce" requirement. The government's evidence showed that, in all three robberies, the robbers stole Newport cigarettes from the gas stations. The government presented testimony that Newport cigarettes are not manufactured in Alabama and are manufactured in North Carolina. Proof of the theft of the gas stations' merchandise manufactured out of state and shipped to Alabama sufficed to show that the robberies affected the business between the gas stations and the out-of-state manufacturers. Further, although not expressly argued by the government at trial, some portion of the large amounts

of currency the robbers took from each gas station were proceeds derived from the sale of fuel products drawn from outside of Alabama and then shipped to Alabama. This, too, affected the business between the gas stations and out-of-state manufacturers. The Eleventh Circuit has held that the government needs only to establish a minimal effect on interstate commerce to support a violation of the Hobbs Act. *United States v. Gray*, 260 F.3d 1267, 1272 (11th Cir. 2001). That standard was met in Carthen's case. Therefore, Carthen can show no prejudice resulting from Conner's failure to present his specific "affecting interstate commerce" argument on appeal.

## III.   CONCLUSION

The undersigned Magistrate Judge RECOMMENDS that Carthen's § 2255 motion be DENIED without an evidentiary hearing and that this case be DISMISSED with prejudice.

Further, it is   ORDERED that the parties shall file any objections to this Recommendation by **May 27, 2022**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which each objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the magistrate judge's findings and recommendations under 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the district court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the district court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1; *see also Stein v.*

*Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*, 661

F.2d 1206 (11th Cir. 1981) (en banc).

      DONE this 13th day of May, 2022.


                    /s/ Kelly Fitzgerald Pate
                    KELLY FITZGERALD PATE
                    UNITED STATES MAGISTRATE JUDGE